UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BRIAN T. HILL, H67149,

               Plaintiff,

     v.

CALIFORNIA CORRECTIONAL
HEALTH CARE SERVICES, et al.,

             Defendant(s).

Case No. 25-cv-04087-CRB  (PR)

**ORDER OF DISMISSAL WITH
PARTIAL LEAVE TO AMEND**

Plaintiff Brian T. Hill, a prisoner at the Correctional Training Facility (CTF) in Soledad, California, has filed a pro se complaint under 42 U.S.C. § 1983 alleging that various CTF officials violated his constitutional rights by compelling him to continually attend a cognitive behavioral intervention (CBI) life skills class and denying his prison grievances relating thereto. For the reasons herein, the Court dismisses Hill's Fourteenth and First Amendment claims without leave to amend and his Eighth Amendment claim with leave to amend.

I.    **LEGAL STANDARD**

Federal courts must engage in a preliminary screening of cases in which prisoner seeks redress from a "governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). Courts must dismiss any part of a complaint that is frivolous, malicious, legally insufficient, or against an immune party. Id. § 1915A(b). Courts must construe pro se complaints liberally, particularly where civil rights are involved. Chambers v. Herrera, 78 F.4th 1100, 1104 (9th Cir. 2023).

To state a claim under § 1983, Hill must allege (1) that he was deprived of a right secured by the Constitution or laws of the United States and (2) that the deprivation was committed under color of state law. Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49–50 (1999). Because the

United States District Court
Northern District of California

1   named CTF officials acted under color of state law, the Court need only consider whether Hill

2   sufficiently alleged that they deprived him of a constitutional right.  See Haygood v. Younger, 769

3   F.2d 1350, 1354 (9th Cir. 1985) (en banc) (citing Monroe v. Pape, 365 U.S. 167, 172–87 (1961)).

4   **II.    DISCUSSION**

5       Hill claims that CTF officials deprived him of four constitutional rights: (A) his Fourteenth

6   Amendment right to due process, (B) his Fourteenth Amendment right to be free from

7   discrimination on the basis of disability, (C) his Eighth Amendment right to be free from

8   deliberate indifference to inmate health and safety needs, and (D) his First Amendment right to

9   petition the government for redress of grievances.

10      **A.    Due Process**

11      Hill alleges that CTF officials' failure to afford him notice and an opportunity to be heard

12  before compelling his attendance at the CBI life skills class violated his right to due process.

13  Compl. (ECF No. 8) at 5–6, 11–17.  A deprivation of due process has three elements: "(1) a liberty

14  or property interest protected by the Constitution; (2) a deprivation of the interest by the

15  government; [and] (3) lack of process."  Armstrong v. Reynolds, 22 F.4th 1058, 1066 (9th Cir.

16  2022) (citation modified).  The Court finds no cognizable liberty interest at play here.

17      Prisoners' liberty interests are "generally limited to freedom from restraint which

18  nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary

19  incidents of prison life."  Sandin v. Conner, 515 U.S. 472, 484 (1995) (citation modified).

20  "'Atypical and significant hardship' is a high bar."  Nielsen v. Thornell, 101 F.4th 1164, 1171 (9th

21  Cir. 2024) (citation modified).

22      The Ninth Circuit has recognized such a hardship, for example, "where [prisons] confine

23  prisoners to their cells for at least twenty-three hours a day and impose additional severe

24  limitations on human contact."  Id. at 1171–72 (collecting cases).  Prison regulations that fall short

25  of this typically do not create a liberty interest.  For example, placement in a private prison with

26  "more lockdowns and restrictions," "higher levels of violence," and "reduced programs and

27  services" does not give rise to a constitutionally protected liberty interest.  Id. at 1172.  Neither

28  does placement in a Restrictive Custody General Population Unit with conditions adverse to the

United States District Court
Northern District of California

2

1    rest of the prison.  See Ashker v. Newsom, 81 F.4th 863, 887 (9th Cir. 2023).  Placement in a tri-

2    weekly CBI life skills class falls well short of the "atypical and significant hardship" necessary to

3    implicate a constitutionally protected liberty interest in prison and find a due process violation.

4    Accordingly, the Court dismisses Hill's due process claim without leave to amend.

5         **B.    Equal Protection**

6         Hill alleges that CTF officials discriminated against him in violation of the Fourteenth

7    Amendment's Equal Protection Clause by compelling him to attend the CBI life skills class

8    despite medical disabilities that made him susceptible to communicable disease.  Compl. at 7.

9    Hill's allegations do not state a cognizable equal protection claim.

10        The Equal Protection Clause of the Fourteenth Amendment directs "that all persons

11   similarly situated should be treated alike." City of Cleburne v. Cleburne Living Center, 473 U.S.

12   432, 439 (1985) (citation omitted).  But Hill does not claim that he was treated differently than

13   similarly situated inmates on the basis of disability.  He does not claim that he was compelled to

14   attend the CBI life skills class because of his medical disabilities whereas inmates without medical

15   disabilities were not compelled to attend the class.  Hill instead claims that CTF officials should

16   have exempted him from attending the class because of his medical disabilities and that their

17   failure to do so somehow amounts to a disability-based denial of equal protection.  It doesn't.

18        In Turner v. Safley, the Supreme Court reiterated the need for judicial deference to the

19   problems of prison administration, holding that when a prison regulation or practice impinges on

20   inmates' constitutional rights, the regulation or practice is valid if it is reasonably related to

21   legitimate penological interests.  482 U.S. 78 (1987).  The only proper standard for determining

22   the validity of a prison regulation or practice claimed to infringe on an inmate's constitutional

23   rights (other than the right to racial equality) is to ask whether the regulation or practice is

24   "reasonably related to legitimate penological interests."  Id. at 89.[1]

25   _____

26        [1] This is true even when the constitutional right claimed to have been infringed is
     fundamental or a suspect class is involved, and the state under other circumstances would be
27   required to satisfy a more rigorous standard of review.  See Washington v. Harper, 494 U.S. 210,
     223-25 (1990) (standard of review adopted in Turner applies in all circumstances in which needs
28   of prison administration implicate constitutional rights).  The one exception is the right to racial
     equality.  See Johnson v. California, 543 U.S. 499, 509-15 (2005) (Turner does not apply to racial

United States District Court
Northern District of California

1     Compelling inmates to attend CBI programs designed to help them manage their substance

2  abuse, anger and criminal thinking by teaching them how to identify and change destructive

3  thought patterns that negatively influence their behavior is reasonably related to legitimate

4  penological purposes.  See id.  Hill does not enjoy an equal protection right to be free from CTF

5  officials' attempts at rehabilitation on the basis of medical disabilities.  His claim that CTF

6  officials should have exempted him from attending the CBI life skills class because his medical

7  disabilities made him more susceptible to communicable disease may amount to an Eighth

8  Amendment deliberate indifference to inmate health and safety claim (if he can allege additional

9  facts, as set forth in the next section) but not a disability-based denial of equal protection claim.

10  Accordingly, the Court dismisses Hill's equal protection claim without leave to amend.

11     **C.     Eighth Amendment**

12     Hill alleges that CTF officials violated his Eight Amendment right to be free from

13  deliberate indifference to inmate health and safety needs by requiring him to attend the CBI life

14  skills class despite medical disabilities that made him susceptible to communicable disease.

15  According to Hill, he suffers from "Asthma, Allergies, sciatica, degenerative disk disease of the

16  spine, disk-space los[s] of the lower spine, being a border-line diabetic" and is "at high-risk for

17  prostate cancer" having been "under screening for prostate cancer for five years[] now."  Compl.

18  at 6–7.  But CTF officials nonetheless exposed him to communicable diseases by requiring him to

19  attend the CBI life skills class and he contracted "various sinus and respiratory viruses" thrice in a

20  two-month period.  Id. at 7-8.

21     A prison official's deliberate indifference to a substantial risk of serious harm to an inmate

22  violates the Eighth Amendment.  Farmer v. Brennan, 511 U.S. 825, 828 (1994).  This type of

23  Eighth Amendment claim "has an objective component and a subjective component."  Hampton v.

24  California, 83 F.4th 754, 766 (9th Cir. 2023), cert. denied, 144 S. Ct. 2520 (2024).  Hill must

25  allege sufficient facts to satisfy both components to state a claim.  Id.

26

27  _____

classifications in prison); Harrington v. Scribner, 785 F.3d 1299, 1306-07 (9th Cir. 2015) (Turner
28  does not trump strict scrutiny analysis for race-based prison equal protection challenges).

### 1.    Objective Prong

The objective component of Hill's Eighth Amendment claim requires him to plausibly allege that it is "contrary to current standards of decency for anyone to be exposed against his will to the relevant hazard." Id. (citation and internal quotation marks omitted). In other words, the resulting risk of exposure must not be one that society chooses to tolerate. Id. This depends on the nature of the hazardous disease and exposure at issue. Applying this standard, the Ninth Circuit concluded a "societal consensus had emerged by May 2020 that the risk of contracting COVID-19 was intolerably grave such that involuntarily exposing inmates to the disease violated then-current standards of decency." Id. at 766 (citation and internal quotation marks omitted). But in the context of Valley Fever, the Ninth Circuit refused to recognize a societal consensus against involuntary exposure to a prevalent but yet tolerable pathogen. See Hines v. Youseff, 914 F.3d 1218, 1230–32 (9th Cir. 2019). Again, whether involuntary exposure to disease violates the Eighth Amendment depends on the nature of the disease and the exposure.

Hill broadly alleges exposure to "diseases, germs, bacteria, and other maladies" and that he contracted "various sinus and respiratory infections." Compl. at 7–8. Hill must allege to which diseases or viruses CTF officials exposed him and facts plausibly showing that involuntarily exposing inmates to the diseases or viruses to which he was exposed was contrary to then-current standards of decency. See Hampton, 83 F.4th at 766.

### 2.    Subjective Prong

The subjective component of Hill's claim requires that he plausibly allege that CTF officials "knew of and disregarded an excessive risk to inmate health and safety." Id. at 767 (citation and internal quotation marks omitted). CTF officials must have been "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and must have actually drawn the inference." Id. (citation modified). If a prison official should have been aware of the risk, but was not, then the official did not violate the Eighth Amendment, no matter how severe the risk. Gibson v. County of Washoe, 290 F.3d 1175, 1188 (9th Cir. 2002).

Although Hill alleges that he suffered from several medical conditions that made him susceptible to communicable disease, he does not plausibly allege that CTF officials knew that

5

1  Hill suffered from medical conditions that made him so susceptible to communicable disease that

2  requiring Hill to attend a class with other inmates would create an excessive risk to his health and

3  safety.  See id.

4          Hill will be provided an opportunity to amend to set forth sufficient facts to plausibly meet

5  the objective and subjective components of the Eighth Amendment claim he proposes, if possible.

6  Hill also must link every named defendant with his allegations of wrongdoing to show how each

7  defendant actually and proximately caused the deprivation of the federal right of which he

8  complains.  See Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988).  Hill is reminded that in a

9  § 1983 action a prison official can only be liable for his or her own misconduct.  Ashcroft v. Iqbal,

10  556 U.S. 662, 677 (2009).  Under no circumstances can a supervisor or superior be liable under

11  § 1983 solely because he or she is responsible for the actions or omissions of another.  Taylor v.

12  List, 880 F.2d 1040, 1045 (9th Cir. 1989).  A supervisor or superior may be liable under § 1983

13  only upon a showing of personal involvement in the constitutional deprivation or a sufficient

14  causal connection between the supervisor's or superior's wrongful conduct and the constitutional

15  violation.  Henry A. v. Willden, 678 F.3d 991, 1003-04 (9th Cir. 2012).

16          **D.      First Amendment**

17          Hill alleges that CTF officials improperly denied his prison grievances regarding his

18  having to attend the CBI life skills class "for nongovernmental purposes, nonsafety and security

19  measures, and non-public reasons but to 'CHILL'" his First Amendment right to petition the

20  government for redress of grievances.  Compl. at 8–11; 22–24.  But it is well established that a

21  "'prisoner's right to petition the government for redress is the right of access to the courts, which

22  is not compromised by the prison's [mishandling or] refusal to entertain his grievance[s].'"  Riley

23  v. Roach, 572 F. App'x 504, 507 (9th Cir. 2014) (quoting Flick v. Alba, 932 F.2d 728, 729 (8th

24  Cir. 1991)).  Accordingly, the Court dismisses Hill's First Amendment claim without leave to

25  amend.

26  **III.    CONCLUSION**

27          For the foregoing reasons, the complaint is dismissed with partial leave to amend, as

28  indicated above, within 28 days of this order.  The pleading must be simple and concise and must

United States District Court
Northern District of California

6

1   include the caption and civil case number used in this order and the words FIRST AMENDED

2   COMPLAINT on the first page.  Failure to file a proper amended complaint within the designated

3   time will result in the dismissal of this action.

4       Plaintiff is advised that the amended complaint will supersede the original complaint and

5   all other pleadings.  Claims and defendants not included in the amended complaint will not be

6   considered by the court.  See King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987).

7       **IT IS SO ORDERED**.

8   Dated: July 25, 2025

9

10  _____
    CHARLES R. BREYER
    United States District Judge